The last case on for argument is United States v. Arce. Good afternoon, Your Honors. May it please the Court. My name is Michael Kushner. I represent Mr. Arce in connection with this appeal. I also represented him at sentencing before Judge Buchwald. I was, however, not his trial counsel or involved in his case prior to sentencing. Your Honor, I was going to start, Your Honors, I was going to start with the first point of my brief, which is the Rule 16 violation, as we allege. However, I thought it was an interesting segue from the last case where there was such overwhelming evidence of the defendant's guilt in that drug conspiracy that I figured that would be a better place for us to start. I would love to start with the Rule 16 issue. So just looking at Rule 16, it requires the government to disclose to the defendant and make available for inspection, copying, or photographing certain evidence. Now, putting aside those parts of the evidence that came into the government's possession on the eve of trial and focusing instead on the evidence that the government had available during the period of time shortly after indictment, can you identify any piece of evidence that the government failed to disclose in the way required by Rule 16? Your Honors, Your Honor, the point that we make with respect to the evidence that was in their possession and was not disclosed concerns the videos that were turned over to counsel in the February disclosures. If Your Honor reviews the transcript of the February hearing before Judge Buchwald, the record is made as clear as possible that the videos were not turned over. Mr. Arce's counsel says that his reading of the government's disclosure letter didn't clue him off that there were videos involved in the case. His proffer session with prior AUSA, one of the prior AUSAs, didn't tip him off to those videos. Could you speak more directly into the microphone, please? Your Honor, I apologize. I'm having a little trouble hearing you. Yes, sir, I apologize. The videographic evidence is the most damaging, I believe, from the government's perspective. It's five hours of video. The government tried to walk Mr. Frank Bonner, prior counsel, through those portions that they thought were the most relevant. But what, from a defense standpoint, how we're disadvantaged is the things that the government wants us to see to make their case in chief are not necessarily the things that we want to see to show our clients innocence, as well as other, perhaps, actors who could be the person that the government thinks is the bad actor in this matter. So I think that the videos are extraordinarily troubling. The way that they were turned over to Mr. Frank Bonner appears to be troubling as well, hidden within it. Not hidden, I apologize for that term. The way a phone dump works, I'm sure Your Honors have seen, there are folders within folders within folders, and Mr. Frank Bonner makes a record in that transcript that I referenced that he didn't understand that there would be videos within there and didn't understand exactly how to open them. So I think that the videos are the most important part of that. And they were in the government's possession of an issue, or at least obviously up to the point of arraignment. Yes, Your Honor, that's the point that we're trying to make, is that the videos were in the government's possession. Now, I believe that there was one phone or maybe two phones that were dumped at that later date, but the ones that concern the stash house that I believe are in their possession since the beginning are not turned over, or at least in that capacity. Well, the question, and why I started with Rule 16's precise language, is it doesn't require the government to turn them over. It requires the government to make them available for inspection. And as I understand it, the government's position, and I think Judge Buchwald found this too, that the government did make them available for defense counsel's inspection through its October 13, 2016 discovery. Your Honor, what that letter indicates to the judge's understanding that there is video, and Judge Buchwald is very clear in her record that defense counsel should have thought that that was video. I don't necessarily know if he conceded that he should have seen that. However, that's the thrust of the government's argument as well as what Judge Buchwald found below. Yes, Your Honor. Thank you. But what we're trying to, you know, even moving beyond the technical violation of Rule 16, Judge Buchwald says this is a screw-up on the government's point, the way they turned this material over. You know, there was some of the files were corrupted, some were not able to be reviewed. What we're trying to deal with here is what's the remedy that the court should have imposed, and what I suggest to the court is that they should have been excluded. I think that the evidence is not only is it, so the government asked me to point to some prejudice. They cite two cases that ask that we show substantial prejudice, and I think that I can point to four different areas of substantial prejudice by the late disclosure. Some of these materials were technical records. They didn't allow the defendant, that three-week period didn't allow the defendant to hire or consult with an expert to perhaps rebut that testimony. Some of the evidence was stale. At this point, it's 2018. This is a 2016 arrest and 2016 investigation. Potential witnesses, potential exculpatory video that might exist that you can see in those materials is gone at this point. Third, I think that some of the evidence could have helped the defendant determine whether or not he should have pled guilty. This was discussed at the February hearing with the court, and Mr. Finkbonner brought up the fact that when I see the evidence, I'm able to have a much better discussion with my client about whether or not he should go to trial, save the government the expense. And then finally, I think that the most important thing is that some of the evidence that was turned over resolved around these IP address tracking summaries. I think that this is the linchpin in the government's case is these IP addresses. It seems like this is the way they tie Mr. Arce to this case, and there's some contradictory evidence about who may have been searching or how you could say it was him. But the fact that some of the summary is turned over this late, right before the trial, prevents Mr. Finkbonner from getting into the heart of that evidence, perhaps consulting and retaining an expert to come into court on his behalf and talk about the inconsistencies with that tracking, talk about the technology of IP address locations, and talk about perhaps a line of defense that's going to exculpate Mr. Arce from this conviction. If I can go back to the evidence for a moment, unlike the prior case where you have the defendant's admissions, the Facebook evidence, the other statements that he made showing his guilt, there's nothing like that in this case. There's a photograph of Mr. Arce carrying a box on his shoulder. That's the direct evidence against him, aside from the cooperator testimony. The box is never seized. The box is never searched. No ---- The cooperator testimony is pretty damning, is it not? I believe the cooperator testimony is contradictory and points in self-serving, Your Honor, which most cooperator testimony could be characterized as. Have you been if it isn't? Sure, Your Honor. But I do believe that the cooperators were inconsistent amongst themselves about their connection to Mr. Arce and also minimizing of their own roles. And I'll save the rest for the bottom. Thank you. Mr. Wren? Have I pronounced your name correctly? Yes, thank you. Good morning, Your Honors, and may it please the Court. I am Nathan Wren, and I represent the government here, and I represented the government at trial. As the district court found, there was no Rule 16 violation in the prosecution of Arce. The government did disclose the existence of all the Rule 16 materials in its possession and make them available to the defense for inspection and review as of October 2016, shortly after the defendant was arraigned in this case. Now, the only thing that the defense highlights as materials that were in the government's possession as of that time that were not actually produced affirmatively to the defense at that time are these videos. With respect to those videos, there's two separate categories that I think we're getting blurred together a little bit in the defense argument. The first is a single surveillance video taken of the outside of this stash house where the defendant was seen entering. That video was approximately five hours long, but only about five minutes of it included footage of the defendant. The government did produce in October 2016 a detailed law enforcement report that provided a narrative description of what was viewable in the video, including with time stamps, identifying the times at which the defendant appears in the video and entered the stash house along with the leader of the conspiracy, and then subsequently the time stamps at which the defendant exited the stash house along with the leader of the conspiracy a short while later. I think Mr. Kushner's argument, or at least a portion of it as I heard it was, but there may be other things on the part that don't include the defendant here, Mr. Arce, that may, that the defense may be able to use on his behalf in defending his case, either as a basis for cross-examination or pointing the finger elsewhere or whatever. And if you accept that argument, and certainly it's the case that the defense was entitled to review the video in its entirety, and given that they were on notice of the existence of this video in October of 2016, they were certainly able to request to see the video at that point in time. But even if you accept that they didn't really have notice until it was, the video itself was actually produced in February of 2018, even if you accept the defense needed to view the entire five-hour video, I would submit that producing it two weeks in advance of the then-scheduled trial of February 26th was more than enough time for the defense to review that video. And certainly the fact that the district court granted an additional three-week adjournment on top of that to provide a total of five weeks for the defense to review the video and make any decisions about whether some additional investigation was required was certainly more than sufficient to provide the defense adequate time to prepare for trial. If the defense in the course of that five-weeks period in which they had access to the video itself and the ability to review the five hours of video had identified some avenue of further identification, they certainly could have called that to the attention of the district court, but they didn't do so. And even here on this appeal, we don't hear the defense saying, we saw on that video some indication that there was some other person that we would have liked to find or something like that. So there's simply no suggestion that even if you thought there was a Rule 16 violation by the fact that a report of the video rather than the video itself was produced, which I don't think is accurate under the actual text of Rule 16, and even if you accepted that the district court's remedy of a three-week adjournment to give the defense time to review that five-hour video wasn't sufficient to allow the defense to determine if additional investigation was required, which we don't accept, if you then get to the question of substantial prejudice, I don't think there's any showing in the record of what the substantial prejudice could have been, given that the defense has now had that video for years and there's no indication that any further investigative steps could have been taken based on that video. With respect to the – there's a second category of videos that were introduced at trial, which were videos taken from forensic images of certain cell phones that were recovered from co-conspirators of the defendant in the course of the investigation. There were really just two cell phone videos introduced at trial. They were brief videos showing the manner in which the cocaine was unpacked by the conspirators when it was received, concealed in these packages that were shipped through the United States Postal Service. Again, those were short videos that the government specifically identified for the defense in that production in early February of 2016. And again, as we've noted in our brief – And gave the defendant the opportunity to inspect through the October disclosure or not? That's exactly right, Your Honor. As I was about to say, as we note in our brief, the October 2016 discovery provided notice of the cell phones that had been seized in the form of invoices from those seizures. And also specifically in the letter to the defense, the government said, if the defense wishes to inspect any of the electronic devices, we will make arrangements for you to do so. Now, we acknowledge that it's ordinarily our practice and policy to provide forensic images of any devices that have been imaged. In this case, some but not all of the devices had been imaged earlier, and they weren't provided until February 2016. That's not consistent with our usual policy, but it is certainly not inconsistent with Rule 16, which merely requires that the government provide the defense with notice of materials in its possession and the opportunity to inspect those. And certainly that was done here, both in the invoices of the seizures that were produced and then in the government's discovery letter, specifically highlighting those electronic devices and offering the defense the opportunity to conduct an investigation.   defense doesn't identify any such substantial prejudice. There's simply this conclusory assertion that the government's decision to provide additional time for the defense to review those materials was more than adequate to address any problems caused by that violation. And again, even assuming there was some problem there, there would still be the issue of whether there's any substantial prejudice from the delayed disclosure. And the defense doesn't identify any such substantial prejudice. There's simply this conclusory assertion that perhaps some additional investigation of those cell phones would have uncovered some unstated evidence. And that's simply not enough to make out a claim for substantial prejudice from that. What the defense does attempt to identify is what they describe as four areas of prejudice in his oral argument. I don't think those were actually identified in their brief, but I'll go through them briefly. Well, were they identified to the district court? Well, some of them were not, certainly. In fact, one of them was, the decision to plead issue. The other ones I don't believe were. So the first thing that's identified is that there were technical materials that may have required some sort of expert consultation. I'm not exactly sure what's being referred to here. In the forensic images of the cell phones that were produced, the materials that were of issue at trial, at least, related to text messages, phone calls, and other forms of communication. There were text messages that were easily reviewable related to these videos that I've described. The government did not introduce any technical evidence such as GPS data or anything else obtained from those cell phones. And the defense hasn't identified any such data that they believe would have been relevant to this case. I note that the cell phones were cell phones that were seized from co-conspirators of the defendant, so it's highly unlikely that technical materials on those cell phones would have been relevant or material to the defense in this case. Then there's a suggestion that somehow the evidence had grown stale, but I don't see how the defense can claim that forensic images of cell phones would somehow be affected by a period of time delay between when they're reviewed and when those images were initially made. The data was intact. There's been no suggestion that there had been some problem in the transmission of the data or the storage of that data. Then the next issue is one that was raised in the district court, which was the question of whether the defense's decision to plead was somehow affected by the fact that the discovery wasn't produced, or it wasn't produced, it was disclosed, but if it wasn't produced until shortly before trial. Rule 16 is tailored to, and the way the cases describe Rule 16, it's really tailored to giving the defense an adequate time to prepare for trial. It doesn't speak to the defense's plea decisions, and I don't think that the case law would  substantial prejudice as a result of a Rule 16 violation. I haven't seen any authority to that effect. To the extent that there was some issue there, the district court recognized in the addendum that we filed in connection with our brief that the only plea-related potential problem with a delay in disclosure is that the defendant decided after reviewing that disclosure that the defendant did wish to plead guilty. There potentially could be issues relating to the degree of credit the defendant would get for acceptance of responsibility sufficiently in advance of trial. But as the district court noted in that addendum, and that's at footnote two on page two of the addendum to our, to our brief, any such prejudice could easily be addressed in, at sentencing. And it, it could well be that the defense would have a good argument for getting that credit, notwithstanding the fact that the plea was later than it necessarily may have been if the defense had received those materials at that time. So I don't, I think that even if you gave the defense the unprecedented ability to claim that there was some substantial prejudice with respect to their decision whether or not to enter a plea, and I also note that the defense made no indication after receiving this discovery that they were interested in entering any plea. That could have been addressed by the district court, and there's no suggestion that the way this case actually proceeded was affected in any event with respect to that. And then the final thing the defense raises is the issue of the IP evidence. The government didn't use any IP address data at trial beyond what had been disclosed in October 2016. We discovered later in time that there was some additional data on a separate database maintained by the United States Postal Service and produced that in an abundance of caution. But as we explained in our brief, that didn't actually affect the IP address testimony and evidence that was produced back in October of 2016. The defense was well aware that that was an important component of the government's case at least as early as that initial discovery, and there's no suggestion that the defense was unable to prepare a defense to that. Unless there are further questions, we'll rest on our brief on that sufficiency issue. Roberts. Judge Winter. I have no questions. Thank you. Thank you, Mr. Wren. Mr. Kushner, you've reserved two minutes for rebuttal. Yes, Your Honor. Just briefly, to the four points that I raised here, these are highlighted in my brief. I would refer to page 18 where I say that the late disclosure prevented him from investigating and presenting evidence to prove his innocence as well as further on. What's important about the staleness argument is not that the forensic images were stale. It's the evidence that you can see on the forensic images could be stale. As Your Honor just mentioned to the government, my argument is that perhaps within those five hours of the Stash House surveillance, there's a person who looks just like Mr. Arce, driving the same Toyota Camry around, shaking hands with Mr. Monsanto Lopez. There's some other evidence that could prove exculpation or at least tend to show innocence rather than guilt with respect to his appearance at that alleged Stash House. The technical data that I reference is not only the, I believe the IP address is technical data and the witness who testified about their usefulness and how they can be linked to Mr. Arce's guilt in this case is technical, but also there were vehicle detection records that would tend to show the location of vehicles that were connected to Mr. Arce, his car as well as a car of his ex-wife. And those things do require technical consultation and perhaps expert testimony to try and refute the presumption that the government is trying to use those items for. And so I would urge the court to find that there was a violation here and that the exclusion of the evidence was the only reasonable basis that the court should have done. And I do see that there's substantial evidence and there's a numinous record to the court to search and I've tried to provide some guidance on that. If there's nothing further, I rest on the brief. Thank you. Thank you both. We'll reserve decision in this case and I will ask the  witness to come forward. . . .